IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD LANE JORDAN,            *

    Plaintiff,             *

v.                             *       Civil Action No. BPG-09-1959

MICHAEL J. ASTRUE,             *
Commissioner of
Social Security,               *

    Defendant.             *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff, Donald Lane Jordan, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (ECF Nos. 18, 30.) These motions have been referred to the undersigned with the parties' consent, pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed below, the court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

## I. Background

Plaintiff Donald Lane Jordan filed a claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on January 6, 2006 and January 24, 2006, respectively. (R. at 51-54; 132-35.) Plaintiff alleges that he became disabled on January 3, 2004, as a result of inter alia, an injury to his left knee, hepatitis C, and a herniated disc in his lower back. (R. at 165-66.) Plaintiff's applications were denied initially (R. at 59), and he did not seek further review (R. at 11).

Plaintiff filed the instant applications on March 15, 2007, alleging a disability onset date of November 22, 2006. (R. at 137-41.) After plaintiff's application was denied initially (R. at 89-93) and upon reconsideration (R. at 96-99), plaintiff appeared via video-conference at a hearing before Administrative Law Judge ("ALJ") William K. Underwood on December 28, 2008 (R. at 19-50.). Plaintiff was represented at his hearing by Yowanda Darby Richardson, Esq. In a decision dated February 27, 2009, ALJ Underwood concluded that plaintiff is not disabled under the relevant sections of the Social Security Act and, accordingly, denied his application for benefits. (R. at 11-18.)

On May 27, 2009, the Appeals Council held that there was no basis for granting review of the ALJ's decision. (R. at 1-3.) Plaintiff now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits he has

2

requested. (ECF No. 18.) In the alternative, plaintiff asks this court to remand the matter to the Social Security Administration for further proceedings. (Id.)

**II. Standard of Review**

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five step analysis. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987).

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

3

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

## III. Discussion

In his memorandum in support of his motion for summary judgment, plaintiff argues that the ALJ erred in three respects. (ECF No. 18-1 at 4-6.) First, plaintiff argues that the ALJ erred by not giving controlling weight to plaintiff's treating physician. (Id. at 4-5.) Second, plaintiff claims that the ALJ "improperly commingled an earlier application with [plaintiff's] present claim." (Id. at 5.) Third, plaintiff contends that the ALJ did not properly analyze which of plaintiff's impairments were severe. (Id. at 6.) In addition, plaintiff argues in the "statement of facts" section of his memorandum that "the ALJ

4

purported in his decision that state agency 'psychological consultants be treated as expert opinion evidence' when there is no psychological evaluation in the evidence of record." (ECF No. 18-1 at 2.) The court will address these arguments in turn.

A. **Whether the ALJ Erred by Not Giving Controlling Weight to Plaintiff's Treating Physician**

Plaintiff first argues that the ALJ improperly discounted the opinion of plaintiff's treating physician, Dr. Koilpillai, and deferred instead to a "non-examining physician who evaluated plaintiff's claim at the initial level [who] could not have evaluated any of the medical evidence obtained after April 27, 2007." (ECF No. 18-1 at 4.) Defendant responds that Dr. Koilpillai's opinion regarding plaintiff's ability to work is "not a medical opinion for purposes of the adjudication of disability" but rather, "an opinion as to his residual functional capacity, an issue reserved to the Commissioner." (ECF No. 30-1 at 14-15 (citing 20 C.F.R. §§ 404.1527(e) and 416.927(e).) Defendant further argues that the ALJ considered Dr. Koilpillai's opinions and concluded that his assessment of plaintiff's functional limitations were inconsistent with the overall evidence, including Dr. Koilpillai's own treatment notes. (ECF No. 30-1 at 16 (citing R. at 16).)

An ALJ must give a plaintiff's treating physician's medical opinion controlling weight, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic

5

techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2); see also, Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence). "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), . . . and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). A statement from a medical source that a claimant is "disabled" or "unable to work," however, is not a medical opinion, but a dispositive administrative finding that is reserved to the ALJ. See 20 C.F.R. § 404.1527(e).

Dr. Koilpillai, a general practitioner, began treatment of plaintiff for a variety of ailments, including lower back pain, hypertension, and hepatitis C, in July of 2007. (R. at 398.) On March 18, 2008, Dr. Koilpillai completed a "Medical Assessment of Ability to Do Work-related Activities (Physical)" in which he concluded that, because of plaintiff's lower back and right knee pain, plaintiff was limited to lifting or carrying five to ten pounds, could only sit or stand for up to three hours in the course of a normal eight-hour workday, and was unable perform any postural activities, such as climbing or balancing. (R. at 363-

6

64.) Dr. Koilpillai noted in his assessment that plaintiff's limitations have been present since January, 2007. (R. at 366.) According to the vocational expert who testified at plaintiff's hearing, an individual with functioning as restricted as that described by Dr. Koilpillai would be unable to perform any hypothetical work in the national economy. (R. at 49.)

Defendant argues that Dr. Koilpillai's opinion that plaintiff is "only capable of working six hours a day" is an administrative finding reserved to the ALJ, and as such, the ALJ was not bound by Dr. Koilpillai's assessment. See 20 C.F.R. § 404.1527(e). Dr. Koilpillai's March 18, 2008 assessment concludes that, because of plaintiff's back and knee pain, he is limited to sitting for up to three hours and standing for up to three hours in the course of a normal workday. (R. at 364.) The court finds that Dr. Koilpillai's assessment is a "medical opinion," as it relates directly to plaintiff's "physical or mental restrictions," and not a legal conclusion that is reserved to the ALJ, as defendant urges. 20 C.F.R. § 404.1527(a)(2).

The court concludes, however, that the ALJ properly afforded Dr. Koilpillai's assessment less than controlling weight because he found that it was inconsistent with other substantial evidence in the record. (R. at 16.) Specifically, the ALJ noted that, although plaintiff has sought treatment for pain, "[t]here is no evidence of progressive degenerative changes," and noted that

7

plaintiff had "5/5 motor strength," no difficulty climbing onto the examination table, and aside from some difficulty raising his left leg and bending, his physical examination was "normal." (R. at 15.) This is inconsistent with Dr. Koilpillai's assessment that plaintiff could only lift or carry five to ten pounds and could "never" climb. (R. at 364.) Additionally, the ALJ observed that plaintiff has had two surgical consultations but was not considered a candidate for surgery, and noted that "despite [plaintiff's] report of disabling pain," plaintiff's pain management specialist, Dr. El-Mohandes, reported that plaintiff "had not been compliant with his treatment." (R. at 15.)

Further, the ALJ found that Dr. Koilpillai's assessment as to plaintiff's physical limitations were inconsistent with his own treatment notes. (Id.) A review of Dr. Koilpillai's treatment notes reveals that in January 2008, for example, Dr. Koilpillai noted that plaintiff had "normal range of motion" and "a normal gait." (R. at 394.) And in July 2008, Dr. Koilpillai reported that plaintiff's pain was "stable." (R. at 389). In sum, the ALJ's decision to afford Dr. Koilpillai's opinion less than controlling weight was supported by substantial evidence. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence).

8

Finally, plaintiff argues that the ALJ erred in relying on the opinion of the non-examining physician who evaluated his claim at the initial level because this physician did not have access to plaintiff's complete medical record. (ECF No. 18-1 at 4-5 (citing SSR 96-6p).) This claim is not sufficient to warrant a remand, however, as plaintiff's medical records that were produced after April 27, 2007 were reviewed by the ALJ, who specifically relied on them in assessing plaintiff's RFC. See Jordan v. Astrue, 2009 WL 2957777 (W.D. Pa. Sept. 10, 2009) (no reversible error where state agency physician did not review complete record where ALJ assessed complete record in fashioning plaintiff's RFC). Moreover, as discussed above, even if the non-examining physician had reviewed these later records, they do not provide compelling support for plaintiff's claim that he is unable to work.

### B. Whether the ALJ Improperly Commingled an Earlier Application with Plaintiff's Present Claim

Plaintiff next argues that the SSA selectively submitted the medical record from plaintiff's earlier application, thereby "undermin[ing] [plaintiff's] current claim." (ECF No. 18-1 at 5.) Specifically, plaintiff points to a missing record from the Thomas B. Finan Center, a psychiatric center in Cumberland, Maryland, where plaintiff sought counseling for "help with drinking." (R. at 168.) Plaintiff argues that the absence of this record "undermine[d] the ALJ's determination that

9

[plaintiff] did not suffer from a severe mental impairment." (ECF No. 18-1 at 5.) Defendant argues in its response that plaintiff was treated at the Finan Center in the winter of 2001, which is "long before the disability onset date alleged in either application." (ECF No. 30-1 at 21.) Moreover, plaintiff's attorney was asked at the hearing before the ALJ in December of 2008 whether she had any additional exhibits to enter into the record, and she replied that she did not. (R. at 23.)

Perhaps most importantly, as defendant points out, plaintiff has not explained what value this report would add to his claim for disability benefits. (ECF NO. 30-1 at 21.) The ALJ considered the evidence of plaintiff's alleged "depression with anxiety" at step two of his analysis and found that it is "controlled with medication and ongoing medical treatment" and that his "daily activities, social functioning, or concentration" are not limited due to his psychiatric impairments alone. (R. at 13.) Plaintiff does not explain how the Finan record, or any other evidence in the record, contradicts this conclusion. As it not clear what impact the omission of this record had on the ALJ's decision, this argument is rejected.[1]

---

[1] Confusing matters further, plaintiff notes at the conclusion of this argument that "[t]he evidence prior to [plaintiff's alleged onset date of November 22, 2006] is not as important as the evidence after that date." (ECF No. 18-1 at 5.) This would appear to contradict plaintiff's argument that his claim was undermined by the omission of the Finan Center record from 2001.

## C. Whether the ALJ Failed to Properly Analyze Which of Plaintiff's Impairments Were Severe

Plaintiff finally argues that the ALJ did not analyze with enough specificity which of plaintiff's impairments were severe. (ECF No. 18-1 at 6 (citing Schoofield v. Barnhart, 220 F. Supp. 2d 512 (D. Md. 2002).) In particular, plaintiff asserts that he was prejudiced by the ALJ's failure to specifically explain his findings regarding severity of plaintiff's right knee, left knee, and liver disease. (Id. (citing Evans v. Heckler, 743 F.2d 1012, 1014 (4th Cir. 1984).) Defendant argues that the ALJ properly considered the severity of plaintiff's impairments. (ECF No. 30-1 at 21-23.)

An impairment is considered severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities," such as walking or lifting, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521(b). On the other hand, an impairment is not considered severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ's findings at step two, like all of his findings, must be supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the ALJ generally has

a duty to explain his findings by making specific references to evidence supporting his conclusions, including the reasons for rejecting evidence that contradicts his findings. Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986). This duty, however, is only triggered when the evidence in the record generates an issue as to the severity of the plaintiff's impairments. Cf. Schoofield v. Barnhart, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (remand to be expected if evidence in record "clearly generates an issue as to a particular listing" and ALJ fails to perform step three Listings analysis); Huntington v. Apfel, 101 F. Supp. 2d 384, 390-92 (D. Md. 2000) (ALJ did not have duty to compare evidence in record to criteria of relevant Listings during step three analysis because there was not "ample evidence" in record to support determination that plaintiff met or equaled any Listing).

The ALJ found that plaintiff's severe impairments included "degenerative disc disease of the lumbar spine and other unspecified arthralgias." (R. at 13.) While the ALJ did not expressly discuss plaintiff's knee pain and liver disease as part of his step two analysis, the ALJ discussed these impairments as part of his RFC determination. (R. at 14-16.) With regard to plaintiff's bilateral knee pain, the ALJ stated:

> [Plaintiff] has degenerative disease of the lumbar spine with stenosis as well as degenerative changes in the lower extremities however, he can ambulate effectively. He has a history of incision and drainage of abcess of

12

the left knee and knee joint secondary to a motor vehicle
accident in 2004 and cellulitis of the right knee; from
which he recovered.  By history, he has occasional knee
pain that responds with medication.

(R. at 15.)  The ALJ found that plaintiff's complaints were "partially credible" but that "his pain is not as limiting as alleged when compared with the medical evidence of record overall."  (Id.)  For example, the ALJ noted that there was "no evidence of progressive degenerative changes," that plaintiff had "5/5 motor strength" and a "normal" physical examination, aside from difficulty raising his leg and bending, and that plaintiff had two surgical consultations but was not recommended for surgery.  (Id.)  In sum, the ALJ adequately explained his conclusion that plaintiff's knee pain was not severe.

With regard to plaintiff's liver disease, the ALJ found that "[t]he evidence of record reflects no significant treatment limitations due to symptoms of Heptatitis-C, asthma; or hypertension which suggest that these conditions are also stable."  (R. at 16.)  A review of the record reveals that plaintiff's treating physicians did not believe that he would benefit from interferon therapy[2] for hepatitis C and recommended only routine monitoring of his liver

---

[2] Interferon therapy involves the injection of a protein into the body to help stimulate the immune system and prevent viruses from multiplying.  It is commonly used in the treatment of various types of cancer as well as viral infections, including hepatitis.  See http://www.wellness.com/reference/allergies/interferon-treatment.

functioning. (R. at 393, 389.) Accordingly, the evidence in the record did not generate an issue as to the severity of plaintiff's liver disease and as such, the ALJ did not err by not specifically addressing it.

In sum, the court concludes that the ALJ did not fail to properly analyze the severity of plaintiff's impairments.[3]

---

[3] Plaintiff also argues in the "statement of facts" section of his memorandum that the ALJ created confusion when he "purported in his decision that state agency 'psychological consultants be treated as expert opinion evidence' when there is no psychological evaluation in the evidence of record. (ECF No. 18-1 at 2 (citing R. at 16).). Defendant responds that this argument is a red herring, as a closer review of the ALJ opinion reveals that the ALJ was citing the text of Social Security Ruling 96-6p, but understood that plaintiff's case was reviewed by two medical doctors at the state agency level, Dr. Sheldon Rudin, M.D. and Dr. L. Robbins, M.D. (ECF No. 30-1 at 13-14 (citing R. at 351-59; 352-61.) Social Security Ruling 96-6p provides, in part:

> Although the administrative law judge and the Appeals Council are responsible for assessing an individual's RFC at their respective levels of administrative review, the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists. At the administrative law judge and Appeals Council levels, **RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources** about what the individual can still do despite his or her impairment(s). Again, they are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence.

## IV. Conclusion

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (ECF No. 18) and grants defendant's Motion for Summary Judgment (ECF No. 30). A separate order shall issue.

Date: 12/27/10                    ____/s/_____
                                  Beth P. Gesner
                                  United States Magistrate Judge

---

SSR 96-6p (emphasis added).

    The ALJ was paraphrasing this provision when he stated, in assessing plaintiff's RFC, that "Social Security Ruling 96-6p requires that the opinions of state agency medical and psychological consultants be treated as expert opinion evidence from nonexamining sources." (R. at 16.) In other words, the portion of the ALJ's opinion plaintiff quotes is a statement of the appropriate standard of review and generates no confusion as to the medical opinion evidence relied upon by the ALJ in reaching his decision. Accordingly, plaintiff's argument is rejected.